Mary A. JOE Plaintiff

v.

**MINNESOTA LIFE INSURANCE COMPANY, Securian Financial Services, Inc., Minnesota Financial Group, Inc., Securian Financial Group, Inc., Securian Financial Holding Company, Chanles Douglass Gulley, Jr., C. Douglass Gulley, Jr. & Associates, Inc., John Doe Defendants A–I Defendants**

No. Civ.A. 102CV154BRR.

United States District Court,
S.D. Mississippi,
Southern Division.

March 31, 2003.

Alben N. Hopkins, Hopkins, Barvie & Hopkins, PLLC, Gulfport, MS, for Mary A. Joe, plaintiff.

Roy C. Williams, Colingo, Williams, Heidelberg, Steinberger & McElhaney, Pascagoula, MS, for Minnesota Life Insurance Company fka Minnesota Mutual Life Insurance Company, defendant.

Roy C. Williams, for Securian Financial Services, Inc. fka Ascend Financial Services, defendant.

Roy C. Williams, for Minnesota Mutual Companies, Inc., defendant.

Roy C. Williams, for Securian Holding Company, defendant.

Arthur D. Carlisle, Arthur D. Carlisle, Attorney, Ocean Springs, MS, for Charles Douglas Gulley, Jr., defendant.

Arthur D. Carlisle, (See above), for C. Douglas Gulley, Jr. & Associates, Inc., defendant.

## MEMORANDUM OPINION AND ORDER

BRAMLETTE, District Judge.

This matter is before the Court on the plaintiff's Motion to Remand [docket no. 4–1]. Having considered the Motion, the Briefs, the applicable statutory and case law, and being otherwise fully advised as to the premises, the Court finds that the plaintiff's Motion is not well-taken and shall be **DENIED.**

In a Memorandum Opinion and Order dated January 24, 2003, this Court reserved its ruling on the Motion to Remand to allow the Minnesota defendants to conduct further remand related discovery. That discovery has now concluded, and the Minnesota defendants filed their Supplemental Memorandum in Opposition to the Motion to Remand on March 10, 2003. The plaintiff submitted no response.

As discussed in this Court's January 24, 2003 opinion, and as set forth in more detail below, the unusual behavior of the plaintiff and the Mississippi defendant has lead the Court to suspect a collusive attempt, between these supposed adversaries, to deprive this Court of jurisdiction. The Court's suspicions center around the great lengths to which the judgment-proof[1] Mississippi defendant, Charles Douglass Gulley, Jr. [Gulley], has gone to make certain that the plaintiff succeeds in stating a cause of action against him.

The Court allowed further discovery on this issue after attorneys for the plaintiff and Gulley, pursuant to the order of the Magistrate Judge, submitted affidavits that offered no explanation for the litigants' unusual behavior. The Minnesota defendants have now deposed those attorneys. What little further information was gained from those depositions has been incorporated in the following account of the events of this action.

The instant action was filed in the Circuit Court of Jackson County, Mississippi on or about March 11, 2002. The plaintiff has asserted twelve claims[2] against the defendants stemming from the fraudulent conduct of one of Minnesota Life's former general agents, co-defendant Charles Douglass Gulley, Jr. [Gulley].[3] The plain-

---

**1.** In his deposition, Gulley's attorney, Arthur Carlisle, states: "Mr. Gulley's assets are the shirt, underwear and shoes that the State of Mississippi provides him." (Affidavit of ... Arthur Carlisle, p. 30).

**2.** (1) breach of fiduciary duty; (2) misrepresentation and concealment; (3) breach of implied covenant of good faith; (4) continuing breach of contract; (5) negligence; (6) negli-

gent infliction of mental and emotional distress; (7) misrepresentation; (8) malpractice; (9) intentional infliction of emotional distress; (10) tort of outrage; (11) continuing misrepresentation and concealment; and (12) negligence *per se.*

**3.** Gulley is currently an inmate in the Mississippi corrections system, serving a ten-year

tiff has also sued Gulley's now defunct corporation, C. Douglass Gulley, Jr. & Associates, Inc.[4]

The Minnesota defendants timely removed this action, asserting, *inter alia*, diversity jurisdiction on the basis of fraudulent joinder of the Mississippi defendants. In addition, the Minnesota defendants argued that Gulley had not been properly served, inasmuch as *Miss. R. Civ. P.* (4)(d)(3) requires personal service of any individual who is incarcerated. The Complaint was served by Adam Miller [Miller], an attorney with the firm representing the plaintiff, upon Arthur Carlisle [Carlisle], who acknowledged, nearly six (6) months after receipt of service, that he had accepted service of process on behalf of Gulley and his corporation and that he would be representing both in this action.

The plaintiff moved to remand in April, 2002. In the briefing that followed this Motion, the central issue that emerged was whether any cause of action the plaintiff might have against Gulley was precluded by the expiration of the statute of limitations. The Minnesota defendants pointed out that Gulley's embezzlement was discovered and widely publicized in the media in the spring of 1998, well over three (3) years before the plaintiff filed this suit. In addition, the defendants presented evidence that Minnesota Life had contacted the plaintiff in the summer of 1998 and reimbursed Ms. Joe over $88,000.00 for the money she lost due to Gulley's embezzlement.

The plaintiff responded that the only parties with standing to assert the statute of limitations, the Mississippi defendants, had not yet raised the defense. Hence, a possibility of stating a cause of action against these defendant did exist and therefore, the Mississippi defendants were not fraudulently joined.

The plaintiff had successfully advanced the same argument in a related case before Judge Walter Gex, in *Snyder v. Minnesota Life Insurance Co., et al.*, 1:02cv156GR. However, the Minnesota defendants filed a Motion to Reconsider in that case, bringing that court's attention to four (4) decisions by other district courts, three (3) from the Southern District of Mississippi, wherein the courts denied the plaintiff's motion to remand *despite the absence of an Answer from an in-state defendant* who could have clearly raised the expiration of a statute of limitations as an effective defense. In response to this Motion, the plaintiff asserted that Gulley had been prevented from filing his Answer because the action was stayed in state court pending remand, and hence, was simply following the Federal Rules.[5] In addition, the plaintiff attached an affidavit from Gulley's attorney, Carlisle, stating that he had indeed accepted service on Gulley's behalf and that he represented him in this action.

In its previous opinion in this matter, the Court noted that it was unclear who or what had prompted the production of this helpful affidavit by Carlisle. Testimony

term after having been convicted of seven (7) counts of embezzlement.

4. The corporation's charter was revoked by the Mississippi Secretary of State prior to the commencement of this suit.

5. The plaintiff cites no authority for this assertion, which is clearly in error. Rule 81(c) states, in pertinent part:

In a removed action *in which the defendant has not answered, the defendant shall answer* or present the other defenses or objections available under these rules within 20 days after receipt through service or otherwise of a copy of the initial pleading setting forth the claim for relief upon which the action or proceeding is based.…
*Fed.R.Civ.P.* 81(c)(2002) (emphasis added).

given during the deposition offers the answer.

Carlisle testified as follows:

Q. Why was this affidavit prepared?

A. Because I believe Mr. Miller asked me to.

(Deposition of Arthur Carlisle, p. 73).

The affidavit was executed on September 13, 2002. The plaintiff submitted this affidavit in *Snyder* and to this chambers on September 16. The attorney whose signature appears on this filing is Mariano J. Barvie'. On September 19, three (3) days after arguing to Judge Gex that Gulley was prevented from filing an Answer and simply following the Federal Rules, Barvie faxed Carlisle a memo stating that Gulley had not yet filed an Answer, and stating: "Please advise if I can expect an Answer within five (5) days from the date of this correspondence, or if I should proceed with an Entry of Default."[6] (Deposition of Arthur Carlisle, Exhibit 3). On September 24, Carlisle served Gulley's Answer on Barvie', but failed to serve the Answer on anyone representing the defendants.[7] Docketing shows that the Answer was not filed with the clerk until October 2, 2002.

In the Answer, Gulley admitted all of the plaintiff's allegations. Gulley also took the opportunity to admit, on information and belief, that the Minnesota defendants were guilty of each allegation stated against them by the plaintiff. But, as stated in this Court's previous opinion, the most unexpected feature of this Answer was that Gulley raised *absolutely no affir-mative defenses*. Specifically, he did not raise the statute of limitations, the one defense that had emerged as the central issue in this case.

Carlisle admits his awareness that the waiver of a statute of limitations defense had become an issue in this litigation, stating, "I'd have to say I don't see how I didn't see it." (Depo. of Carlisle, p. 57).[8] But when asked if he had done any thinking, prior to filing Gulley's Answer, about what defenses Gulley might have, Carlisle answers, "No." (Depo of Carlisle, p. 56). Furthermore, Carlisle flatly denies discussing potential defenses with Gulley.

Q. And I don't—I'm not asking you to tell me what your conversation with Mr. Gulley was. I'm asking you a yes or no question. Did you discuss with Mr. Gulley what defenses he might have in responding to this; yes or no?

A. No.

(Depo. of Carlisle, p. 57). Carlisle in later asked directly why the statute of limitations was not raised as defense. At this point, Carlisle asserts attorney/client privilege. (Depo. of Carlisle, p. 78).

Not unexpectedly, these depositions provide very little in the way of explanation as to why Gulley would forego a perfectly valid defense. Moreover, the answers provided leave this situation even murkier than before. As Carlisle testified, he never discussed potential defenses with Gulley, although he knew that the statute of limitations defense was an issue in this litigation. But despite this knowledge of

---

6. The Court notes that this is an extraordinary courtesy to extend a supposed adversary who is already five (5) months in default.

7. Carlisle's explanation for his failure to serve all counsel of record at the same time is that it was "a mistake." (Depo. of Carlisle, p. 72). Likely recognizing the appearance that this failure to serve the defendants gave, Carlisle continued: "You know, I've always sat where you are sitting, and I hear people say stuff and say, oh, I wish I had written that down. This is the time I do." *Id.*

8. In fact, Carlisle admits that prior to filing Gulley's Answer, he received and read at least portions Judge Gex's opinion in *Snyder*, which directly addressed the statute of limitations issue. (Depo. of Carlisle, p. 60–61).

the statute's relevance, he states that, prior to filing his client's Answer, he never thought about potential defenses for Gulley.

After the unrevealing affidavits originally provided by Miller and Carlisle, the Court allowed further discovery in this matter, in large part, to provide the plaintiff an opportunity to answer the questions raised by the Court in its opinion. The evidence previously before the Court was, in the undersigned's estimation, sufficient for a finding that the parties had colluded to fraudulently join Gulley for the purpose of defeating diversity jurisdiction. Further discovery was permitted so that the plaintiff would have an opportunity to provide a reasonable explanation for what had transpired.

No reasonable explanation has been forthcoming. As such, the Court must conclude that if what Carlisle says is correct, that he had no discussions with Gulley about defenses, then the omission of said defenses in the Answer could not have been at Gulley's direction. Carlisle did not, however, indicate that the lack of any affirmative defense in the Answer had been an oversight. Therefore, from his testimony, it is reasonable to conclude that the omission of the statute of limitations defense was purposeful.

The intended omission of a valid defense, by a party who admits awareness of that defense's relevance, is, in this Court's opinion, sufficient evidence that this resident defendant has been fraudulently joined solely for the purpose of depriving this Court of jurisdiction. Further discovery has, not unexpectedly, revealed no "smoking gun." However, it is clear that the only effect of defendant Gulley's presence in this lawsuit is that of assistance to the plaintiffs. As Carlisle said during his deposition: "[W]e all know these lawsuits are about deep pockets. Mr. Gulley is not one." (Depo. of Carlisle, p. 49).[9]

From the failure to raise a valid defense, to the provision of a helpful affidavit, and the use of an Answer to assail fellow defendants in this action, all the evidence points to the conclusion that defendant Gully is more aligned with the plaintiff than with the Minnesota defendants.

Faced with a similar situation, the court in *In Re: Diet Drugs*, 220 F.Supp.2d 414 (E.D.Pa.2002), denied a motion to remand after a finding, based on affidavits, deposition testimony, and circumstantial evidence of collusion between certain defendants and the plaintiffs, that these defendants had been fraudulently joined to prevent removal. The court found that, while colorable claims against these defendants existed, the plaintiffs had "no real intention in good faith to seek a judgment against [them]." *Id.* at 422. *See also Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 99, 42 S.Ct. 35, 66 L.Ed. 144 (1921) (upholding the denial of a plaintiff's motion to remand when the district court found that the resident defendant was joined "without any purpose to prosecute the action in good faith as against him and with the purpose of fraudulently defeating the employer's right of removal").

Describing the collusion in that case, the court stated that the parties were

engaging in improper efforts to prevent [the defendant] from exercising its statutory right under 28 U.S.C. § 1441 to remove cases based on diversity of citizenship to the federal courts in Louisiana and Mississippi. This statutory right, we should not forget, emanates

---

9. The Minnesota defendants, in their Supplemental Response, have represented to the Court that in the first round of lawsuits stemming from Gulley's embezzlement, the plaintiffs' counsel, which included Miller, never moved to default Gulley, even though he filed no Answer. (Supplemental Response, p. 17).

from Article III, Section 2 of the Constitution. As long as Congress authorizes the federal district courts to exercise subject matter jurisdiction over diversity actions we must protect the right of parties to invoke it. We recognize that [the defendant] has a heavy burden to prevent remand, but that burden has been met here.... What has been transpiring can only be characterized as a sham, at the unfair expense not only of [this defendant] but of many individuals and small enterprises that are being unfairly dragged into court simply to prevent the adjudication of lawsuits against the real target, in a federal forum. As aptly stated by our Court of Appeals in *Boyer*, quoting the ALI Study of the Division of Jurisdiction between State and Federal Courts, "so long as federal diversity jurisdiction exists ... the need for its assertion may well be greatest when plaintiff tries hardest to defeat it."

*Id.* at 425 (citations omitted).

This Court concludes that the joinder of Charles Douglass Gulley, Jr. and C. Douglass Gulley, Jr. & Associates, Inc., in this action constitutes a fraudulent attempt to defeat the Minnesota defendants' statutory right of removal. The evidence before the Court indicates that this plaintiff, as have other plaintiffs in related cases prior to this one,[10] has no good faith intention of prosecuting her claim against these resident defendants. As such, pursuant to Rule 21,[11] the Court will sever the claims against these defendants and DISMISS these claims WITHOUT PREJUDICE. Should the plaintiff actually wish to pursue her claims against these defendants, she may do so in the courts of the State of Mississippi. The plaintiff's Motion to Remand is DENIED. Accordingly,

IT IS HEREBY ORDERED that the plaintiff's Motion to Remand [docket no. 4–1] is **DENIED.**

IT IS FURTHER ORDERED that the plaintiff's claims against defendants Charles Douglass Gulley, Jr. and C. Douglass Gulley, Jr. & Associates, Inc., are **DISMISSED WITHOUT PREJUDICE.**

---

10. *See* footnote 9.

11. "Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceed with separately." *Fed.R.Civ.P. 21.*